J-S61027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RICHARD CAVALLERO, II | |
| Appellant | No. 58 WDA 2016 |

Appeal from the Judgment of Sentence October 14, 2013
In the Court of Common Pleas of McKean County
Criminal Division at No(s): CP-42-CR-0000486-2012

BEFORE:  PANELLA, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 10, 2016**

Richard Cavallero, II, appeals from the judgment of sentence entered in the Court of Common Pleas of McKean County following his jury-trial convictions for criminal conspiracy[1]/robbery,[2] criminal solicitation[3]/robbery,

---

[1] 18 Pa.C.S.A. § 903.

[2] 18 Pa.C.S.A. § 3701.

[3] 18 Pa.C.S.A. § 902(a).

criminal conspiracy/burglary,[4] criminal conspiracy/criminal trespass-enter structure,[5] and criminal conspiracy/simple assault.[6] Upon review, we affirm.

The charges in this matter relate to the robbery of a fifty-year-old woman that occurred in her apartment. The testimony at trial revealed the following. The victim, Sheila Goodnow, had a prescription for Fentanyl patches to help manage her pain. On July 26, 2012, at about 10:00 PM, after Goodnow had recently filled her prescription, Tyler Sherman knocked on Goodnow's door, claiming to be a police officer. When Goodnow opened the door, Sherman pushed her onto a seat, put a knife to her throat, covered her eyes, and demanded her Fentanyl patches. Goodnow told Sherman to take one off her arm, which he did, and ran out of the apartment.

Jessica Smith was walking down the street when she heard a woman scream. Smith saw a man dressed in all black run down the street and jump into the passenger seat of a red pick-up truck that drove away with the lights off. She noted the license plate and phoned the police with the information.

---

[4] 18 Pa.C.S.A. § 3502.

[5] 18 Pa.C.S.A. § 3503.

[6] 18 Pa.C.S.A. § 2701.

Michelle Distrola, a practical nurse working for the Smethport Family Practice, testified that on the date in question, Cavallero and Goodnow were both at Smethport Family Practice. Goodnow was discussing her Fentanyl patch medication at the reception window while Cavallero was in the waiting room.

Jessica Abplanalp, Sherman's girlfriend, testified that on July 26, 2012, Cavallero came to the house she shared with Sherman to cut her hair. She overheard a conversation between Cavallero and Sherman, in which Cavallero told Sherman he knew of a woman that had just received a Fentanyl prescription and it would be easy to take them from her. Cavallero told Sherman he needed his help because the woman knew who he was; thus, around 9:00 PM, Sherman left the house dressed in dark clothing and got into Cavallero's red pick-up truck. Abplanalp testified Sherman returned about 40 minutes later, and told her he had gone into a woman's house and taken a Fentanyl patch from her arm.

Sherman testified, corroborating that Cavallero had informed him about the woman with the Fentanyl prescription and that it would be easy to take them. Sherman further stated that he and Cavallero discussed robbing her. After entering Cavallero's truck to go to Goodnow's building, Sherman told Cavallero he was worried someone else would be in the apartment. Cavallero indicated he had a knife, which Sherman took and used in the robbery. Sherman also used a bandana that had been in Cavallero's truck to

cover his face. After arriving at the apartment building, Cavallero directed Sherman to Goodnow's apartment.

Assistant Chief Mike Ward of the Bradford City Police Department received information regarding the incident and suspected Abplanalp might have relevant information. Chief Ward contacted her, and based on their conversation, began preparing an application for a search warrant. On July 27, 2012, at about 3:00 PM, Cavallero was apprehended while standing with his red pick-up truck outside the police station, where he was given **Miranda** warnings.[7] A search warrant was executed on his truck, from which a black bandana and knife were recovered. Sherman was also taken into custody and interviewed, and he admitted that he had robbed Goodnow. He further stated he had used the black bandana and the knife from Cavallero's truck in the robbery.

On July 27, 2012, Cavallero was arrested and charged with the aforementioned conspiracy and solicitation offenses. On August 6, 2013, a jury found Cavallero guilty on all counts. On October 14, 2013, Cavallero was sentenced to an aggregate sentence of 7½ to 17 years' incarceration. Cavallero filed a timely notice of appeal and court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Cavallero raises two issues for our review:

---

[7] **Miranda v. Arizona**, 384 U.S. 436 (1966).

I.   Did the [t]rial [c]ourt err when it denied [Cavallero's] [m]otion to [s]uppress [e]vidence as it pertains to a black bandana, when the [a]pplication for [s]earch [w]arrant only describes a "blue bandana," and a Case fixed-blade knife, when the same [a]pplication for [s]earch [w]arrant merely describes "a knife" with no particularity?

II.   Were the [j]ury's verdicts supported by sufficient evidence to convict [Cavallero] of [c]riminal [c]onspiracy/[r]obbery, [c]riminal [c]onspiracy/[b]urglary, [c]riminal [c]onspiracy/ [c]riminal [t]respass-[e]nter [s]tructure, and [c]riminal [c]onspiracy/[s]imple [a]ssault?[8]

Brief for Appellant, at 4.

Cavallero first challenges the sufficiency of the evidence.  We review the sufficiency of evidence according to the following standard:

[W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty.  Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 72 A.3d 706, 707-08 (Pa. Super. 2013)

(internal citations and quotation marks omitted).

_____

[8] Cavallero does not include in his statement of questions a claim that the conviction for criminal solicitation was not supported by sufficient evidence; however, he does include that charge in the argument section of his brief. Because we are able to engage in meaningful review of the claim, we will not consider it waived.

"[T]he trier of fact, while passing upon the credibility of the witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Valette*, 613 A.2d 548, 549 (Pa. 1992) (internal citations omitted). In applying this test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Blystone*, 617 A.2d 778, 780 (Pa. Super. 1992).

Here, four of Cavallero's five convictions were for conspiracy. Sherman committed the acts constituting the underlying crimes of robbery, burglary, criminal trespass, and simple assault, while Cavallero was involved in planning and aiding Sherman in carrying out those acts.

To establish robbery, the Commonwealth must show:

[I]n the course of committing a theft, [a person]: (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; (iii) commits or threatens immediately to commit any felony of the first or second degree; (iv) inflicts bodily injury upon another or threatens with or intentionally puts him in fear of immediate bodily injury; (v) physically takes or removes the property from the person of another by force however slight[.]

18 Pa.C.S.A. § 3701.

To establish burglary, the Commonwealth must show: "[W]ith the intent to commit a crime therein, the person: (1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]" 18 Pa.C.S.A. § 3502.

To establish criminal trespass, the Commonwealth must show: "[K]nowing that he is not licensed or privileged to do so, [a person]: (i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or (ii) breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S.A. § 3503(a).

To establish simple assault, the Commonwealth must show an individual "(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another . . . [or] (3) attempts by physical menace to put another in fear of imminent serious bodily injury[.]" 18 Pa.C.S.A. § 2701.

Here, the Commonwealth presented evidence that Sherman knocked on Goodnow's residence pretending to be a police officer, pushed her onto a seat, put a knife to her throat and demanded her Fentanyl patches. In the course of a theft, he put Goodnow in fear of immediate serious bodily injury, thus establishing robbery. With the intent to perform a robbery, Sherman entered Goodnow's apartment, a building adapted for overnight accommodations where she was present at the time of the offense, establishing burglary. He gained entry to an occupied structure by subterfuge, claiming to be a police officer, establishing criminal trespass. Finally, he attempted to put Goodnow in fear of imminent serious bodily injury by putting the knife to her throat, establishing simple assault.

Cavallero alleges that the Commonwealth's evidence was insufficient to sustain his convictions for criminal conspiracy with respect to the above crimes. Conspiracy is defined, in relevant part, as follows:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime[.]

18 Pa.C.S.A. § 903.

"[A] conspiracy conviction requires proof of (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy." *Commonwealth v. Spotz*, 716 A.2d 580, 592 (Pa. 1998). A conspiracy conviction requires proof of a shared criminal intent; however, because it is difficult to prove an explicit or formal agreement to commit an unlawful act, the agreement may be proven by circumstantial evidence, such as the relations, conduct, or circumstances of the parties of overt acts of the co-conspirators. *Id.*

The agreement to engage in an unlawful act creates a theory of vicarious liability called conspiracy liability. *Commonwealth v. Hannibal*, 753 A.2d 1265, 1273 (Pa. 2000). This liability theory "assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of

which members of the conspiracy undertook the action." ***Id.*** (internal citations omitted).

Instantly, the Commonwealth presented sufficient evidence to establish criminal conspiracy. The evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, shows that Cavallero was present in the waiting room of the Smethport Family Practice when Goodnow discussed her Fentanyl prescription. Later that same day, he went to cut Abplanalp's hair and told Sherman that he knew of a woman with a Fentanyl prescription and that it would be easy to take her patches. Cavallero elicited Sherman's help because he believed Goodnow would recognize him. He then returned to Sherman's home later in the evening and drove Sherman to Goodnow's residence, providing him with a knife, a bandana to cover his face, and the location of the apartment. Finally, Cavallero provided the escape vehicle, driving away after the robbery with his lights off, evincing his knowledge that Sherman had committed a criminal act. All of these relations, circumstances, and actions provided sufficient evidence for the jury to find a criminal conspiracy. ***Spotz***, ***supra***.

Furthermore, because a criminal conspiracy to commit a robbery was found, all the overt criminal acts Sherman committed in furtherance of that conspiracy are imputable to Cavallero through co-conspirator liability. ***Hannibal***, ***supra***. Therefore, we find that there was sufficient evidence to support the jury's verdicts on the conspiracy charges.

Cavallero also argues that the evidence was insufficient to prove criminal solicitation. "A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages, or requests another person to engage in specific conduct which would constitute such crime[.]" 18 Pa.C.S.A. § 902(a). Here, the evidence demonstrated that Cavallero informed Sherman that he needed his help for fear of being recognized, and provided transportation and items needed for the robbery. Accordingly, the Commonwealth submitted sufficient evidence to support the jury's verdict on criminal solicitation.

Cavallero's final claim is that the trial court erred when it denied his motion to suppress evidence, specifically, the black bandana and "Case fixed-blade knife." Cavallero argues that the bandana described in the search warrant is a "blue bandana" and a black bandana was seized; thus it should have been suppressed because of the discrepancy between the description in the warrant and the actual item seized. He further alleges that because a knife is a common item and the one used in the robbery had distinct features, the knife should have been described with more particularity in the warrant. This claim is meritless.

We review the denial of a motion to suppress physical evidence as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Houck***, 102 A.3d 443, 455 (Pa. Super. 2014) (internal citations and quotations omitted). Here, the record supports the trial court's factual findings, so we proceed to examine the court's legal conclusions.

A search warrant may not be used as a general investigatory tool to uncover evidence of a crime. ***In re Casale***, 517 A.2d 1260, 1263 (Pa. 1986). The necessary components of a search warrant are set forth in Pa.R.Crim.P. 205, which provides as follows:

Each search warrant shall be signed by the issuing authority and shall: (1) specify the date and time of issuance; (2) identify specifically the property to be seized; (3) name or describe with particularity the person or place to be searched; (4) direct that the search be executed either; (a) within a specified period of time, not to exceed 2 days from the time of issuance, or; (b) when the warrant is issued for a prospective event, only after the specified event has occurred; (5) direct that the warrant be served in the daytime unless otherwise authorized on the warrant . . .; (6) designate by title the judicial officer to whom the warrant shall be returned; (7) certify that the issuing authority has found probable cause based upon the facts sworn to or affirmed before the issuing authority by written affidavit(s) attached to the warrant; and (8) when applicable, certify on the face of the warrant that for good cause shown the affidavit(s) is sealed pursuant to Rule 211 and state the length of time the affidavit(s) will be sealed.

Pa.R.Crim.P. 205.

However, even though Rule 205 forbids general or exploratory searches, search warrants should "be read in common sense fashion and

- 11 -

should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." Pa.R.Crim.P. 205 (cmt.); **see also**, ***Commonwealth v. Matthews***, 285 A.2d 510, 513-14 (Pa. 1971) (affirming denial of motion to suppress because, "[t]o rule otherwise, merely because the warrant specified a 'pocket knife' whereas 'a kitchen knife' was seized would be hypertechnical and contrary to the common-sense approach mandated by [the United States Supreme Court]").

Under the Pennsylvania Constitution, the items sought to be seized must be described as nearly as possible before the issuance of a warrant. Pa. Const. Art. I, § 8. When assessing "the validity of the description contained in a warrant, a court must determine for what items probable cause existed." ***Commonwealth v. Grossman***, 555 A.2d, 896, 900 (Pa. 1989). The sufficiency of the description is measured against those items for which probable cause existed, and any unreasonable discrepancies between the items and the description require suppression. ***Id.***

Instantly, the application for the search warrant lists, *inter alia*, a "blue bandana" and "a knife." Although a discrepancy does exist between the black bandana seized and the description contained in the search warrant application, it is not an unreasonable discrepancy warranting suppression. The description of the items for which probable cause existed were based on the testimony of the victim, Goodnow, and an eyewitness, Smith. The women testified that the attacker was wearing either "all black" or, as stated

- 12 -

in the probable cause affidavit, "dark" clothing.  Both women also testified that it was approximately 10:00 PM and pitch-black outside.  Therefore, it would be contrary to common sense and "hypertechnical" to invalidate the search warrant describing a bandana as blue when it is in fact black, when the victim managed only to briefly glimpse her attacker before being blindfolded.  Pa.R.Crim.P. 205; **Matthews**, **supra**.

Cavallero also claims the knife should have been described with more particularity because it is a "Case fixed-blade knife."  Goodnow testified that she only briefly saw the knife before Sherman put his hands over her eyes, but that it felt "like a blade" against her throat.  N.T. Trial, 8/15/13, at 52.  Because an exact description of the particular item was not possible, and because we are convinced that the search in this case was not exploratory, a "generic description" is sufficient.  Pa.R.Crim.P. 205.  Accordingly, the trial court did not err in declining to suppress the knife.

In sum, we find that the Commonwealth presented sufficient evidence to support the jury's verdicts for all five counts and that the trial court did not err in denying Cavallero's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2016