[J-92-2015] [M.O. - Dougherty, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 705 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated January 9, |
| | : | 2015 in the Court of Common Pleas, |
| | : | Philadelphia County, Criminal Division |
| v. | : | at No. CP-51-CR-0428351-1993. |
| | : | |
| | : | SUBMITTED: January 20, 2016 |
| SHELDON HANNIBAL, | : | |
| | : | |
| Appellant | : | |

### DISSENTING OPINION

**CHIEF JUSTICE SAYLOR**                              **DECIDED: November 22, 2016**

I agree with Appellant's position that errors and attorney derelictions occurred in connection with the admission of evidence, at his trial, of a triple murder for which Appellant was never charged or tried. Although the majority finds the relevant claim to have been previously litigated, *see* Majority Opinion, *slip op.* at 31-32, it is significant, from my point of view, that this Court has never addressed the main contention that Appellant sought to raise on direct appeal.[1]

At the direct appeal stage, Appellant presented a substantially developed argument that his trial counsel was ineffective in failing to assert that the prejudicial

---

[1] I note that, although my name is listed as within the Court complement in published versions of the direct-appeal disposition, I did not participate in the decision, since I was ineligible to vote given that the case was argued prior to my tenure on the Supreme Court. For this reason, my name is not included in the voting summary set forth at the conclusion of the opinion. *See Commonwealth v. Hannibal*, 562 Pa. 132, 146, 753 A.2d 1265, 1272-73 (2000) (Opinion Announcing the Judgment of the Court).

impact of evidence of the collateral triple murder greatly outweighed its probative value.[2] *See* Brief for Appellant in *Hannibal*, 562 Pa. 132, 753 A.2d 1265, 1997 WL 33544659, at *29-33. In addressing this claim, however, this Court's lead opinion relegated the treatment, along with the disposition of numerous of other claims, to a superficial and conglomerated footnote. *See Hannibal*, 562 Pa. at 144 n.11, 753 A.2d at 1272 n.11. For example, the lead opinion mischaracterized the claim that Appellant was attempting to raise as involving only the murder of a single individual, *see id.* (indicating that "[Appellant] claims that his trial was unfair because evidence of the murder of Tanesha Robinson, a witness, was admitted into evidence[.]"), whereas, the claim encompassed the admission of evidence of a collateral *triple* murder. *See, e.g.*, Brief for Appellant in *Hannibal*, 562 Pa. 132, 753 A.2d 1265, 1997 WL 33544659, at *29 ("[T]he prosecution deliberately, meticulously and relentlessly infected the trial of the murder of Mr. LaCort with another, shadow trial concerning the uncharged but particularly inflammatory crime, the murder of Tanesha Robinson *and her two young companions*, in the presence of a six month old baby." (emphasis added)).

The lead opinion also treated Appellant's claim as entailing an assertion that trial counsel failed to object to the admission of such evidence, when, in point of fact, Appellant's brief had related that counsel repeatedly objected and moved for a mistrial. *See id.* at *32-33 ("[T]rial counsel made a number of objections and an initial motion for mistrial with respect to this evidence and the lack of notice given."). Finally, and most significantly, the lead opinion wholly overlooked the actual point of Appellant's argument, *i.e.*, the contention that trial counsel's stewardship was deficient in his failure

---

[2] *See, e.g.*, *Commonwealth v. Newman*, 528 Pa. 393, 399, 598 A.2d 275, 278 (1991); *accord* Pa.R.E. 404(b)(2) (explaining that evidence of other bad acts is admissible, in a criminal case, "only if the probative value of the evidence outweighs its potential for unfair prejudice").

to trigger the essential balancing inquiry concerning probative value versus prejudicial impact. *Compare Hannibal*, 562 Pa. at 144 n.11, 753 A.2d at 1272 n.11 ("[T]here was no basis to object to the evidence because it was admissible to show [Appellant's] consciousness of guilt."), *with* Brief for Appellant in *Hannibal*, 562 Pa. 132, 753 A.2d 1265, 1997 WL 33544659, at *29-30 ("It is a fundamental principle of law in this Commonwealth that *even relevant evidence* must at times be excluded if the potential for prejudice exceeds the probative value of the evidence." (emphasis in original)).[3]

In the circumstances -- where lapses in judicial review have occurred and the fault rather plainly lies with this Court -- I believe that we should presently review the

---

[3] The lead opinion additionally criticized Appellant's brief on direct appeal for failing to set forth the three-part test governing claims of deficient attorney stewardship. *See Hannibal*, 562 Pa. at 144 n.11, 753 A.2d at 1272 n.11. However, Appellant's brief had substantively covered all three facets of the test, in that he straightforwardly asserted that trial counsel committed a material dereliction by failing to advance the balancing inquiry; that the lawyer had "no possible strategic reason" for failing to do so; and that material prejudice ensued. Brief for Appellant in *Hannibal*, 562 Pa. 132, 753 A.2d 1265, 1997 WL 33544659, at *32-33.

To the extent that the lead opinion's truncated disposition was based on Appellant's failure to include mere boilerplate, I do not regard this as a fair approach to claims resolution. Moreover, to the degree that the Court requires boilerplate, counsel on direct appeal should be deemed ineffective for failing to set it forth.

Parenthetically, I note that this Court is suffering pointed criticisms from the federal courts pertaining to other instances of superficial treatment of claims for relief in the capital litigation arena. *See, e.g.*, *Dennis v. Secretary, Pa. DOC*, 834 F.3d 263, 285 (3d Cir. 2016) ("[T]he Pennsylvania Supreme Court's decisions . . . rested on unreasonable conclusions of fact and unreasonable applications of clearly established law[.]"); *id.* at 346 (Jordan, J., concurring) (characterizing the relevant disposition by this Court as a three-sentence "drive-by discussion," reflecting a "lack of analytical rigor and attention to detail [that is] painful to contemplate" and which is "so obviously wrong" that "any fairminded jurist must disagree"); *Miller v. Beard*, ___ F. Supp. 3d ___, ___, 2016 WL 5848728, at *21-22 (E.D. Pa. Oct. 5, 2016) (highlighting the paucity in the treatment by the Court of a claim for relief asserted by a capital appellant on direct appellate review; observing that the Court's review proceeded "without any basis or substantial reference to the trial or PCRA court record"; and concluding that that such review manifested "an unreasonable application of clearly established federal law").

claim which Appellant has been attempting to raise for more than fifteen years without interposing additional hurdles. Notably, in this regard, the majority finds no material difference between the claim asserted on direct appeal and the one that Appellant advances at present. *See* Majority Opinion, *slip op.* at 31-32. Furthermore, I find a fundamental inconsistency in the majority's simultaneous assertion that a claim is previously litigated on the ground that it is *the same claim* disposed on direct appeal, *see id.*, but that the newly-asserted claim must also be regarded as *a different claim*, when confronted with the question of whether the Court should remedy its own patent failure to fairly address it in the first instance. *Compare* Majority Opinion, *slip op.* at 31 (indicating that "Appellant has failed to articulate any material difference between the instant claim of a due process violation resulting in an unfair trial and the substantive claim raised and rejected on direct appeal."), *with id.* at 32 n.14 (asserting that, in his present brief, appellant presently "has not raised" the claim asserted on direct appeal).[4]

---

[4] This Court has obviously had difficulty with a fair and just application of the previous litigation doctrine, which too frequently has been administered in a rote fashion, rather than with evaluative judgment. *See, e.g.*, *Commonwealth v. Collins*, 585 Pa. 45, 56-58, 888 A.2d 564, 570-71 (2005) (discussing such lapses in the context of permutations of the previous litigation doctrine deemed to encompass claims of ineffective assistance of counsel asserted at the post-conviction stage). From my point of view, application of the doctrine should be better grounded in fundamental fairness.

Notably, had Appellant's present brief straightforwardly asserted the claim raised on direct appeal, this would have invited a dismissive application of the previous litigation doctrine. Nevertheless, viewed substantively and without compartmentalization, Appellant's present arguments encompass precisely the same concerns as were raised on direct appeal about low probative value, *see, e.g.*, Brief for Appellant at 20 (discussing the "unreliability and incredulity" of the source of the evidence that Appellant had been involved in the triple murder), and high prejudicial effect, *see, e.g.*, *id.* at 16 (explaining that "the prosecutor was permitted to introduce evidence and argument of the execution style killing of three young women" and "that an infant was abandoned at the scene"); *id.* at 24 ("Courts have long recognized the prejudicial effect of allegations that a defendant committed other criminal acts."). It is also significant, from my point of view, that application of our state evidentiary rules requiring a balancing of probative value and prejudice (the overlay of the direct appeal) serves to protect defendants' due
(continued…)

The Commonwealth's contention that Appellant was involved in the collateral triple murder rested largely on the testimony of jailhouse informant James Buigi. This, in my view, lessens its probative value substantially.[5] Moreover, given that the Commonwealth had the use of admissible testimony from two eyewitnesses who placed Appellant at the crime scene in the role of an armed aggressor at the time of the killing for which Appellant was on trial, as well as Buigi's testimony to Appellant's confession to having perpetrated this killing, I question the necessity for the Commonwealth to adduce highly prejudicial other-bad-acts evidence to demonstrate a consciousness of guilt.

In terms of prejudicial impact, it would be difficult to overstate the inherent inflammatory power of evidence of the killing of a fifteen-year-old girl and two young women in the presence of a baby. *Cf. Commonwealth v. Robinson*, 623 Pa. 345, 375, 82 A.3d 998, 1016 (2013) (commenting on the impact of multiple murders upon lay jurors in capital sentencing). Indeed, one cannot review the present record without apprehending the degree to which the collateral triple murder pervaded the guilt and penalty phases of trial. For example, the prosecutor overtly (and, in my view, improperly) capitalized on this effect, including in his closing argument to the jury at the penalty stage, as follows:

---

(…continued)
process right to a fair trial (which is the theme of the present post-conviction presentation). *Accord United States v. Enjady*, 134 F.3d 1427, 1432-33 (10th Cir. 1998).

[5] Although the courts generally have allowed the prosecution's use of jailhouse informants in criminal cases, it is an attenuation to authorize the admission of evidence of collateral, uncharged crimes based on such evidence. In this regard, my thoughts are in line with those jurisdictions regarding this strain of evidence as being inherently suspect. *See, e.g.*, *State v. Marshall*, 882 N.W.2d 68, 81-83 (Iowa 2016) (explaining that "[t]he problem of proof, along with questions of reliability, have given rise to requiring some corroboration of jailhouse informant testimony to support a conviction in at least eighteen states").

And there are three young women, teenagers. They all have families who come here and cry; mothers, fathers, sisters, brothers. They would cry an ocean along with the [victim's] family. You would have tears filling this room. But none of those tears affect those two. All of the tears in the world don't put a dent in those cold, feelingless hearts.

That snitch-ass bitch got to die. The others in the room. They all die. It's got to be done in front of a little crying baby. There is someone crying, a baby crying while his mother is executed[,] while the gun is placed against her head so it doesn't make too much noise and her brains are blown out. The little baby is crying. But that doesn't put a dent in those cold hearts. But they want mercy. They don't deserve it.

Ladies and Gentlemen, any person, or persons, who can do these terrible things so long as they breathe the same air that you and I breathe are a danger to us all.

N.T., Mar. 11, 1994, at 68-69.

In summary, in my considered judgment trial counsel was ineffective for failing to pursue a determination by the trial court that the probative value of the evidence of the collateral triple murder was substantially outweighed by the inflammatory impact.

Accordingly, I would award a new trial and respectfully dissent.

Justice Donohue joins this dissenting opinion.