Gerald EVERETT, Appellant,

v.

Jeffrey A. BEARD, Ph.D., Warden Sci Camp Hill; The District Attorney of the County of Philadelphia, Lynn Abraham; The Attorney General of the State of Pennsylvania, Michael Fisher.

No. 00–1662.

United States Court of Appeals, Third Circuit.

Argued: Oct. 30, 2001.

Filed: May 2, 2002.

Norris E. Gelman, (Argued), Philadelphia, PA, for appellant.

Thomas W. Dolgenos, (Argued), Chief, Federal Litigation, Ronald Eisenberg, Deputy District Attorney Law Division, Arnold H. Gordon, First Assistant District Attorney, Office of District Attorney, Philadelphia, PA, for appellees.

BEFORE: SLOVITER, NYGAARD and AMBRO, Circuit Judges.

**OPINION OF THE COURT**

SLOVITER, Circuit J.

**I.**

Gerald Everett, who drove the automobile carrying two men who robbed and then murdered the proprietor of a grocery store, was convicted of first-degree murder in the Court of Common Pleas of Philadelphia County, Pennsylvania, following a charge that explicitly permitted the jury to

impute to Everett the murderer's intent to kill. The Pennsylvania Supreme Court thereafter specifically held such a charge to be reversible error, although its holding followed inexorably, as the court itself said, from previously enunciated state law. The Supreme Court of the United States has also held that such a charge violates the Due Process Clause of the United States Constitution. The question before us is whether we can do anything about Everett's conviction for first-degree murder following the erroneous charge.

No one alleges that Everett intended that anyone would be shot. Nonetheless, the state trial judge, in charging the jury, said over and over again that Everett could be found guilty of intentional murder if his accomplice intended to cause the death of the victim. Everett's counsel failed to object to this charge. In the appeal before us, Everett challenges the denial of his petition for a writ of habeas corpus claiming violations of his Sixth Amendment right to effective assistance of counsel by virtue of his counsel's failure to object.

## II.

### FACTS AND EARLIER PROCEEDINGS

On July 17, 1979, Gerald Everett drove Raymond Gray and Robert Burgess to the 1600 block of Kater Street in Philadelphia. During the drive Gray and Burgess said they were going to commit a robbery. Gray and Burgess entered a candy store owned and operated by Jon Jennings and drew guns. Jennings attempted to grab the gun of one of the perpetrators and a struggle ensued. The other perpetrator walked over to Jennings and shot him once in the chest, causing his death. When the two men fled the store, Everett picked them up and drove them away from the scene. Everett admits that he drove the others to and from the store and does not deny that he was an accomplice.

### A. *State Court Proceedings*

Everett was charged with first-degree murder, robbery, and criminal conspiracy. At Everett's trial, the prosecutor said in his opening statement:

> At no point in time will I stand here and tell you that this defendant was the actual shooter; at no point in time has or is anyone in this case ever going to say that this defendant was inside Mr. Jennings['] candy store that day. He wasn't. There's no question about that. What we are proceeding on is something called an accomplice theory, accomplice liability and a conspiracy theory.

App. at 45. In his closing statement, the prosecutor said:

> And the one thing I want to stress to you ladies and gentlemen, to convict this man of murder you don't have to find that they discussed shooting anyone beforehand because they obviously didn't. I'm not going to stand here and make a moron out of myself and tell you that they planned to shoot Jon Jennings. They didn't. It happened.

Supp.App. at 598–99.

> After the close of trial, the judge charged the jury in pertinent part as follows:

> Now, ladies and gentlemen, I am going to discuss with you the various concepts of homicide.

> The defendant in this case is charged with an offense involving what we call criminal homicide, which is the taking of a human life without justification or excuse.

> . . . .

> It is your duty in this case to determine whether the victim, Mr. Jennings, died

as a result of an act of the defendant amounting to criminal homicide, or whether the defendant's act *or that of an accomplice* actually caused the criminal homicide, and if so, if it was done by the defendant, as you determine the facts, *and/or an accomplice* of the defendant, if so, whether the killing that resulted therefrom, if you were to so find that it did occur, was murder in the first degree, murder of the second degree, murder of the third degree or voluntary manslaughter.

I shall now instruct you in the elements of each of these offenses. . . .

First: Murder of the first degree: In order to find this defendant guilty of murder in the first degree, you must find that all of the following elements have been established by the Commonwealth beyond a reasonable doubt: One, that the defendant *or an accomplice* caused the death of another person—in this case Mr. Jennings; that is, you must find that the death of Mr. Jennings would not have occurred but for the alleged acts of the defendant *or his accomplices*, if there are any in this case.

Two: that the killing was intentional. A killing is intentional if it is done by means that are determined to be willful, deliberate and premeditated. . . .

A killing is willful and deliberate if the defendant *and/or his accomplice*, if there were any, consciously decided to kill the victim, and it is premeditated if the defendant *or his accomplice*, if there were any accomplices, *possessed a fully informed intent to kill* at the time when the killing took place, even though there need not have been any appreciable amount of time between the time when the defendant *and/or the accomplice*, if any, first conceived the idea of killing, and the time when the action took place.

An intentional killing, as I have defined the term for you, may be found from any expressed words used by the defendant *or his accomplice*, if any exist, or may be implied from the words or conduct of the defendant *or his accomplice*. It should be noted that if the defendant *or his accomplice*, if any, intentionally used a deadly weapon, such as a gun, with bullets in it, on a vital part of the victim's body, you may infer from this fact, or these facts, that the killing was intentional, and therefore willful, deliberate and premeditated.

App. at 68–71 (emphasis added). In addition, with respect to accomplice liability generally, the judge instructed the jury as follows:

You may find the defendant guilty of a crime without finding that he personally performed the acts or engaged in the conduct required for the commission of the crime or crimes that I have already mentioned, or even that he was personally present when the crime or crimes were committed.

A defendant is guilty of a crime if he is an accomplice of another person who commits the crime here involved, or crimes here involved. Such a defendant is an accomplice if, with the intent of promoting or facilitating the commission of the crime or crimes here involved, he, the defendant, solicits, commands, encourages or requests that the other person or persons involved commit the crime or crimes, or he aids, or agrees to aid, or attempts to aid, or abets in the other person committing or planning the commission of the crime. . . .

You may find the defendant guilty of the crime on the theory that he was an accomplice, as long as you are satisfied, ladies and gentlemen of the jury, beyond a reasonable doubt that the crime or crimes were committed and that the de-

fendant was the accomplice of the person or persons who committed it under the definitions of an accomplice that .I just gave you.

App. at 82–83.

Trial counsel failed to object to these instructions. Further, trial counsel complimented the judge on the fairness of these instructions after the jury left the courtroom.

> Mr. Greene [Everett's attorney]: I think probably it would be a waste of time to go over each and every point. You certainly have covered most everything here, and—
>
> The Court: I want to cover everything, not most.
>
> . . . .
>
> Mr. Greene:—I would also like to state for the record that I consider your charge eminently fair, and my compliments to the Court for the quality of the charge that it gave to this jury.

App. at 86. During its deliberations, the jury requested an explanation of the different degrees of murder. The trial judge repeated the same instructions. App. at 101–04.

On October 9, 1980, Everett was convicted of first-degree murder, robbery, and criminal conspiracy. He was sentenced to life in prison on February 25, 1981. Represented by the same attorney who represented him at trial, Everett appealed his conviction. His direct appeal to Superior Court failed. *Commonwealth v. Everett,* 299 Pa.Super. 182, 445 A.2d 514 (1982). The Pennsylvania Supreme Court denied allocatur. *Commonwealth v. Everett,* No. 310 E.D.Alloc.Dkt.1982.

### B. *State Collateral Proceedings*

Everett then obtained new counsel and, starting on October 4, 1982, filed post-conviction relief petitions in accordance with the Post Conviction Relief Act (PCRA), 42 Pa.Cons.Stat. §§ 9541–46 (2001). Prior to the PCRA hearing, the lawyer withdrew three of the four claims made in the last petition and, on the day of the hearing, withdrew the remaining claim. Relief was denied. Represented by new counsel, Everett appealed arguing that previous counsel had poorly served Everett's interests by withdrawing all his claims. The Superior Court remanded for further proceedings. On remand, Everett raised ineffective assistance of counsel claims. Later, Everett sent this new counsel a letter instructing her to withdraw the PCRA petition, which she did. No further appeal was taken.

In 1988, Everett, represented by yet another attorney, filed a third PCRA petition, which alleged ineffective assistance of trial counsel. This petition was denied. On appeal, the decision was affirmed. *Commonwealth v. Everett,* 399 Pa.Super. 646, 573 A.2d 1157 (1990). Allocatur was denied. *Commonwealth v. Everett,* 527 Pa. 585, 588 A.2d 507 (1991).

In August 1995, Everett's present counsel filed a fourth PCRA petition, alleging ineffective assistance at trial, in particular arguing that counsel's failure to object to the definitions for accomplice liability given in the context of the trial court's definition of first-degree murder resulted in a miscarriage of justice. The Court of Common Pleas reached the merits of this issue,[1] holding that the jury charge was proper and that trial counsel was not ineffective. App. at 39–41.

---

1. The Commonwealth does not argue on appeal that the ineffective assistance of counsel claim before us was impermissibly repetitive, and therefore we have not inquired into that issue.

With regard to Everett's ineffective assistance of counsel claims, that court said that:

> With respect to the issue of ineffectiveness, counsel is presumed to be effective and the defendant has the burden of proving ineffectiveness. *Commonwealth v. Williams*, 524 Pa. 218, 570 A.2d 75 (1990)[.] In order to carry this burden the defendant must first show that the claim which counsel failed to raise has arguable merit and that counsel's failure to raise it was without a reasonable basis which would effectuate the defendant's best interests. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)[.] Second, the defendant must show that counsel's ineffectiveness worked to his prejudice.

App. at 40 (citations omitted). The court stated that Pennsylvania law on jury instructions for first-degree murder accomplice liability was not settled at the time, and therefore held that Everett's counsel was not ineffective under state law. The Court of Common Pleas did not address Everett's due process claim.

The Superior Court affirmed the denial of PCRA relief in an unpublished memorandum opinion. *Commonwealth v. Everett*, 700 A.2d 1024 (Pa.Super.1997); App. at 33–37. The Superior Court recognized that the Pennsylvania Supreme Court had decided that a charge such as that given by the *Everett* trial judge was improper, citing *Commonwealth v. Bachert*, 499 Pa. 398, 453 A.2d 931 (1982) (*Bachert II* ), and *Commonwealth v. Huffman*, 536 Pa. 196, 638 A.2d 961 (1994). App. at 36. In *Bachert II*, the Pennsylvania Supreme Court stated that "it is necessary to look to [the accomplice's] state of mind [which] must be proved beyond a reasonable doubt to be one which the accomplice harbored and cannot depend upon proof of intent to kill only in the principal." 453 A.2d at 935.

In *Huffman*, the court relied on and quoted from its *Bachert II* decision for the relevant statement of accomplice liability for first-degree murder, holding that the jury charge that an accomplice may be found guilty of first-degree murder even if he did not have the specific intent to kill was "quite simply, a patently erroneous statement of the law." 638 A.2d at 962 (citing *Bachert II*, 453 A.2d at 935).

Despite this explicit exposition of the relevant law as enunciated by the Pennsylvania Supreme Court, the Superior Court in Everett's case stated that Pennsylvania's general rule of retroactivity does not apply to a case on collateral appeal unless the decision was handed down during the pendency of the defendant's direct appeal. App. at 36–37 (citing *Commonwealth v. Gillespie*, 512 Pa. 349, 516 A.2d 1180 (1986)). The Superior Court, in affirming the denial of Everett's PCRA petition, concluded that the general rule of retroactivity was not applicable and that the Pennsylvania Supreme Court's decisions in *Huffman* and *Bachert II* did not apply to Everett's case because they were decided after his trial conviction and appeal.

The Superior Court agreed with the PCRA court that Everett's counsel was not ineffective because Pennsylvania law regarding proper jury instructions for first-degree murder accomplice liability had not been settled. The Superior Court analyzed the claim of ineffective assistance of counsel as follows without citing any federal case law or United States Supreme Court precedent:

> We are first required to determine whether the issue underlying the claim is of arguable merit. *Commonwealth v. Johnson*, 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991).... Even if the underlying claim has merit, the appellant still must establish that the course of action chosen by his counsel had no reasonable

basis designed to effectuate the client's interests and, finally, that the ineffectiveness prejudiced his right to a fair trial. *Id.; Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

App. at 35–36. The Superior Court did not address Everett's due process claim, which is the constitutional context for asserting that there was ineffective assistance of counsel in a state criminal trial.

Everett sought review by the Pennsylvania Supreme Court. *Commonwealth v. Everett,* 704 A.2d 634 (Pa.1997). Allocator was denied. *Id.*

### C. *Federal Habeas Corpus Proceedings*

Everett filed a Petition for Writ of Habeas Corpus on October 19, 1998. He raised one claim: that trial counsel was constitutionally ineffective for failing to object to the trial court's charge on accomplice liability. On June 18, 1999, the Magistrate Judge assigned to the habeas case issued a report in which she recommended that the petition be denied. App. at 14–28. The Magistrate Judge assumed, without deciding, that the instructions were improper under current law but concluded that (1) the state court's rejection of Everett's ineffectiveness claim had been reasonable because the legal basis for an objection to the accomplice instructions had not yet been developed by the state courts at the time of trial; and (2) to the extent Everett claimed that counsel had been ineffective for not objecting to the same instructions on due process grounds (as opposed to objecting based on state law), the legal grounds for this federal constitutional claim were also undeveloped at the time of trial and therefore this ineffectiveness claim was also meritless.

On May 3, 2000, the District Court issued an order approving and adopting the

recommendations of the Magistrate Judge and denying Everett's petition for habeas relief. App. at 12–13. Everett sought permission to appeal this ruling with this court, and we issued a Certificate of Appealability on March 21, 2001.

## III.

## JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction over the petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241(c)(3) and 2254(a). This court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

■ This court applies a plenary standard of review when a "district court dismisses a habeas petition based on a review of the state court record and does not hold an evidentiary hearing," as in this case. *See Duncan v. Morton,* 256 F.3d 189, 196 (3d Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 269, 151 L.Ed.2d 197 (2001) (citing *Zilich v. Reid,* 36 F.3d 317, 320 (3d Cir. 1994)). In conducting a habeas analysis, a federal court must presume that the factual findings of both state trial and appellate courts are correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner can overcome this presumption only in the face of clear and convincing evidence to the contrary. *Id.; Duncan,* 256 F.3d at 196.

■ Under the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas relief on any claim adjudicated on the merits in state court is precluded unless the adjudication resulted in a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[2] The

---

**2.** The second exception set forth in the statute

covering an adjudication that "resulted in a

AEDPA standard of review does not apply unless it is clear from the face of the state court decision that the merits of the petitioner's constitutional claims were examined in light of federal law as established by the Supreme Court of the United States. *Hameen v. Delaware,* 212 F.3d 226, 248 (3d Cir.2000), *cert. denied,* 532 U.S. 924, 121 S.Ct. 1365, 149 L.Ed.2d 293 (2001). When, as here, AEDPA does not apply for that reason, the pre-AEDPA standards of review apply. *Id.* Under that standard, a federal habeas court owes no deference to a state court's resolution of mixed questions of constitutional law and fact; *see Williams v. Taylor,* 529 U.S. 362, 400, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring) (citing *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)),[3] whereas the state court's factual findings are presumed to be correct unless, inter alia, the state court's findings are not "fairly supported by the record." *Pemberthy v. Beyer,* 19 F.3d 857, 864 (3d Cir.1994) (quoting 28 U.S.C § 2254(d)(8)). But, of course, as the Supreme Court has recognized, "a state court's incorrect legal determination has [never] been allowed to stand because it was reasonable." *Williams,* 529 U.S. at 402, 120 S.Ct. 1495 (O'Connor, J., concurring) (quoting *Wright v. West,* 505 U.S. 277, 305, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992)). Indeed, in her opinion in *Williams,* Justice O'Connor reiterated, "[w]e have always held that federal courts, even on habeas, have an independent obli-

gation to say what the law is." *Id.* (internal quotation omitted).

## IV.

## DISCUSSION

Everett's habeas petition was filed on October 19, 1998, after AEDPA's effective date. Both the Court of Common Pleas and the Superior Court of Pennsylvania reached the merits of Everett's underlying state law claim of ineffective assistance of counsel based on failure to object to the jury instructions on first-degree murder accomplice liability. Were we reviewing Everett's state law claim, it would therefore be assessed under the standards contained in AEDPA. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to both Everett's state law claim and his federal due process claim, the threshold question is whether the habeas petitioner seeks to apply a rule of law that was clearly established by the United States Supreme Court at the time his or her state-court conviction became final. Everett seeks relief due to ineffective assistance of counsel, which is squarely governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* test qualifies as "clearly established Federal law, as determined by the Supreme Court." *Williams,* 529 U.S. at 391, 120 S.Ct. 1495; *id.* at 413, 120 S.Ct. 1495 (O'Connor, J., concurring).

---

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," 28 U.S.C. § 2254(d)(2), is not at issue here.

**3.** No single opinion in *Williams* garnered a majority of the court. Parts I, III and IV of Justice Stevens' opinion garnered a six-judge majority. *Williams,* 529 U.S. at 367–374, 390–399, 120 S.Ct. 1495. Part II of Justice

O'Connor's opinion (with the exception of a footnote) garnered a five-judge majority. *Williams,* 529 U.S. at 402–413, 120 S.Ct. 1495 (interpreting the clause of 28 U.S.C. § 2254(d)(1) that refers to "contrary to, or involved an unreasonable application of, clearly established Federal law"). Six justices agreed that the *Strickland* test governed the claim of ineffective assistance of counsel in Williams' habeas petition.

Applying *Strickland,* this court recently has held that in order to establish a claim of ineffective assistance of counsel, the petitioner must establish both that his counsel's performance was deficient and that the deficient performance prejudiced his trial to the extent that it undermined confidence in the trial's outcome. The standard by which we judge deficient performance is an objective standard of reasonableness, viewed to the extent possible from the attorney's perspective at the time, without "the distorting effects of hindsight."

*Duncan v. Morton,* 256 F.3d 189, 200 (3d Cir.2001) (citing and quoting *Strickland,* 466 U.S. at 687–90, 104 S.Ct. 2052). To demonstrate prejudice, the habeas petitioner must show a "reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

In addressing the reasonableness of an attorney's representation, reviewing courts must be deferential in their scrutiny and scrupulously avoid the distortions of hindsight by viewing performance from counsel's perspective at the time. *Id.* at 689–90, 104 S.Ct. 2052. Furthermore, claimants must identify specific errors by counsel, and the court must indulge a strong presumption that counsel's conduct was reasonable. *Id.* at 690, 104 S.Ct. 2052.

Everett argues that his trial counsel did not meet the *Strickland* standard for an effective counsel given then-current Pennsylvania law regarding accomplice liability for first-degree murder and then-current federal due process jurisprudence. Further, he argues that counsel's failure to act as effective counsel was directly responsible for his conviction for first-degree murder. We turn to the searching review we must give to Everett's federal due process claim.

### A. *Federal due process claim*

Everett argues that his trial counsel was ineffective for failing to raise an objection to the jury instructions based on both due process and Pennsylvania law. Everett's claim under the *Strickland* ineffective assistance standard was addressed by neither the Court of Common Pleas nor the Superior Court of Pennsylvania. We will therefore review de novo whether Everett's trial counsel should have objected to the jury instructions.

In addressing the issue of ineffective assistance of counsel, the parties have focused primarily on the question whether, at the time of Everett's trial, it was established under federal law and/or Pennsylvania law that a judge must instruct the jury that in order to find a defendant charged as an accomplice guilty of first-degree murder, it must find that the defendant had the intent to kill the victim. *Strickland* teaches that the standard by which counsel is to be judged is that of "a reasonably competent attorney," 466 U.S. at 687, 104 S.Ct. 2052 (quotation omitted), in criminal cases, and that even if counsel has not met that standard s/he will not be labeled constitutionally ineffective unless the defendant has been prejudiced. *Id.* at 691, 104 S.Ct. 2052.

Of course, the state of the law is central to an evaluation of counsel's performance at trial. A reasonably competent attorney patently is required to know the state of the applicable law, so the parties' focus upon the state of the law at the time of Everett's trial is not misplaced.

At the time of Everett's conviction, the primary relevant case on due process for a criminal defendant was *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In that case, the Supreme Court stated: "Lest there remain

any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364, 90 S.Ct. 1068. Several years later and still before Everett's trial, the Court applied the principle of *Winship* to jury instructions, holding that jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused. *Sandstrom v. Montana,* 442 U.S. 510, 523, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (citing *Winship,* 397 U.S. at 364, 90 S.Ct. 1068). Clearly, a reasonably competent lawyer in 1980 would have carefully scrutinized jury instructions to make sure that the instructions required proof beyond a reasonable doubt of each element of a crime.

Because Everett was charged with murder under state law, we must necessarily reference the elements of accomplice liability for first-degree murder under Pennsylvania law in 1980 in order to evaluate the effectiveness of Everett's trial counsel. According to Pennsylvania law, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being," 18 Pa.Cons.Stat. § 2501 (1973); "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing," 18 Pa.Cons.Stat. § 2502(a) (1974); and an intentional killing is "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." *Id.* § 2502(d).

This law was interpreted by the Pennsylvania Superior Court in a decision filed on October 19, 1979, eleven months prior to Everett's conviction. *Commonwealth v.*

*Bachert,* 271 Pa.Super. 72, 412 A.2d 580 (1979) (*Bachert I* ), aff'd in part and rev'd in part on other grounds, 499 Pa. 398, 453 A.2d 931 (1982). Among the issues in *Bachert* was whether an accomplice had to have the specific "deliberate, willful and premeditated" intent to kill in order to be found guilty of first-degree murder or whether this intent could be transferred to an accomplice. *Bachert I,* 412 A.2d at 583. Pennsylvania Supreme Court Justice Robert Nix, sitting by designation on the Superior Court and writing for that court in *Bachert I,* held that "[s]ince first degree murder requires the existence of a specific intent to take life, the evidence must show that the shared intent included the design to take the life of the victim." *Id.* This decision applied a well-established principle of Pennsylvania law and found that the case before it was closely analogous to prior cases that had considered the principle. The decision in *Bachert I* did not impose new obligations on the prosecution in first-degree murder cases.

The *Bachert I* court discussed Pennsylvania Supreme Court cases where defendants were charged with first-degree murder on an accomplice theory. *Id.* at 583–84. In each of the cases cited, the court had addressed the necessity of finding that the defendant had the requisite specific intent before finding the defendant guilty of first-degree murder via accomplice liability. In *Commonwealth v. Smith,* 480 Pa. 524, 391 A.2d 1009 (1978), decided two years prior to Everett's conviction, the Supreme Court of Pennsylvania sustained a finding of first-degree murder as to an accomplice because the evidence provided a basis for the jury to find that he had formed a specific intent to assist the taking of the life of the deceased. *Bachert I,* 412 A.2d at 584 (discussing the *Smith* decision). The facts that proved the requisite intent for first-degree murder in *Smith* were: (1) Smith armed himself for the

express purpose of seeking out the victim and shooting him; (2) Smith heard a member of his group state, "Who do I shoot;" (3) Smith himself asked, "Which one is Bruce?" (the victim); and, (4) during the shooting Smith had his weapon drawn and discharged it several times. *Id.* at 584.

The *Bachert I* court also discussed *Commonwealth v. Hampton,* 462 Pa. 322, 341 A.2d 101 (1975), decided five years before Everett was convicted. *Bachert I,* 412 A.2d at 584. In *Hampton,* the defendant twice aimed a gun at the victim but failed to shoot. He gave the gun to an accomplice who said, "Give me the gun. I'll show you how it's done." *Hampton,* 341 A.2d at 103. The defendant's accomplice then shot the victim to death. *Id.* The Supreme Court of Pennsylvania affirmed the jury conviction of first-degree murder after finding that Hampton had exhibited the requisite intent to kill the victim. *Bachert I,* 412 A.2d at 584. Applying the analysis of the Pennsylvania Supreme Court in these cases, the Pennsylvania Superior Court reversed Bachert's conviction.

In 1982, the Pennsylvania Supreme Court reversed part of the Superior Court's 1979 decision in *Bachert I. Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (1982) (*Bachert II* ).[4] Importantly, however, the Pennsylvania Supreme Court agreed with the holding of the Superior Court of significance to the present case. In other words, the Supreme Court of Pennsylvania disagreed with the application of the rule of law, but not with the rule of law itself.

Superior Court decisions are (and, in 1980, were) the law of the Commonwealth. As the Pennsylvania Supreme Court has held,

> it is well established that a Superior Court decision which has not been overruled or reversed is binding authority on this Commonwealth's trial courts. *In re Townsend's Estate,* 349 Pa. 162, 36 A.2d 438 (Pa.1944). In *In re Townsend's Estate,* we stated that "a lower court has no right to ignore the latest decision of the Superior Court of this Commonwealth on an issue which has been squarely decided. Until that decision should be overruled by the Superior Court itself or overruled by the Supreme Court, it is still the law of this Commonwealth...." *Id.* at 168, 36 A.2d at 441.

*Keblish v. Thomas Equip., Ltd.,* 541 Pa. 20, 660 A.2d 38, 42–43 (1995). Thus, although *Bachert I* had been appealed to the Pennsylvania Supreme Court at the time of Everett's trial, it was the Pennsylvania Superior Court's decision in *Bachert I* that represented the state of Pennsylvania law on the elements needed to convict an accomplice of first-degree murder.

Everett argues that the instructions that the trial court gave to the jury improperly relieved the Commonwealth of the burden of proving the most critical element of state law for accomplice liability for first-degree murder, i.e., the specific intent to kill, and therefore the charge violated due process. The Commonwealth in turn argues that the jury instructions were not deficient because the trial court had correctly instructed the jury on accomplice

---

4. The Pennsylvania Supreme Court disagreed with the Superior Court about whether the particular evidence offered by the Commonwealth was sufficient to prove the accomplice's state of mind. The Superior Court thought that certain statements made by Bachert did not bear on whether he had "the

requisite intent to kill the victim at the time of the killing by [the principal]." *Bachert I,* 412 A.2d at 584. In contrast, the Supreme Court held that these statements were sufficient to support the inference that Bachert intended to facilitate the murder. *Bachert II,* 453 A.2d at 936.

liability generally, which it contends, in effect, cured any error in the instructions for first-degree murder. The Commonwealth argues that the jury instructions should be read as a whole, and in particular that jury instructions on accomplice liability and first-degree murder should be read together to evaluate the propriety of the instructions. *See, e.g., Commonwealth v. Hannibal,* 562 Pa. 132, 753 A.2d 1265, 1269–70 (2000), *cert. denied,* 532 U.S. 1039, 121 S.Ct. 2002, 149 L.Ed.2d 1004 (2001) (assessing jury instructions regarding accomplice liability for first-degree murder "as a whole").

■ There can be no dispute that the propriety of jury instructions is to be determined by assessing the entire set of instructions. That proposition has been established by both the Supreme Court, *see, e.g., Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), and by this court, *see, e.g., United States v. Isaac,* 134 F.3d 199, 203 (3d Cir.1998). However, the assessment must be made on a case-by-case basis. The mere fact that the law was correctly stated in one part of the charge will not automatically insulate the charge from a determination of error.

In *Hannibal,* on which the Commonwealth places much emphasis, the jury was instructed that to find the defendant guilty of first-degree murder, it must be satisfied that "the defendant, his accomplice or co-conspirator [killed] with the specific intent to kill and with malice." 753 A.2d at 1270. Although the jury was also instructed on accomplice liability with incorrect words similar to those used by Everett's trial judge when he instructed the jury on accomplice liability, the Pennsylvania Supreme Court noted that the trial court "consistently and in understandable language referred to the need to consider whether each individual in the case possessed the requisite specific intent to kill."

*Id.* at 1271. It appears that the *Hannibal* court believed that the trial court's instructions on accomplice liability sufficed to counterbalance the mistaken instructions on first-degree murder.

In contrast, at Everett's trial the judge offered the instruction on accomplice liability once, but instructed the jury twelve times (six times in the actual jury instructions and six times in response to a query from the jury during deliberations) that it could convict Everett of first-degree murder based on the principal's intent to kill without regard to Everett's own intent. The error cannot be either erased or minimized, as the Commonwealth suggests.

The Commonwealth's principal argument is that Pennsylvania law regarding jury instructions for accomplice liability for first-degree murder was not clearly established at the time of Everett's trial and therefore the trial judge was not required to explain to the jury that to find an accomplice guilty of first-degree murder, it must find that the accomplice shared the killer's specific intent to kill. The Commonwealth contends that Pennsylvania did not clearly establish this rule until *Commonwealth v. Huffman,* 536 Pa. 196, 638 A.2d 961, 962–63 (1994), fourteen years after Everett's trial. It contends that *Bachert I* is inapposite here because *Bachert I* did not involve a challenge to a jury instruction on accomplice liability but rather involved a claim that the evidence was insufficient to prove that the defendant was guilty as an accomplice.

Everett takes issue with the Commonwealth's view of the applicable Pennsylvania law at the time. He argues that even though the Superior Court's opinion in *Bachert I* did not directly discuss jury instructions but concerned the sufficiency of the Commonwealth's evidence that Bachert committed first-degree murder, questions of sufficiency necessarily require con-

sideration of the elements of the crime and the need to prove each of the elements beyond a reasonable doubt.

■ Further, Everett argues, contrary to the Commonwealth, that *Huffman* did not establish new law but merely articulated the law that existed at the time of *Bachert I* and described therein. He contends that Pennsylvania law since the enactment of the 1972 Criminal Code required proof of specific intent to kill on the part of an accomplice, and cites in support *Commonwealth v. Wayne,* 553 Pa. 614, 720 A.2d 456 (1998). Indeed, in *Wayne,* the Pennsylvania Supreme Court, after discussing *Bachert II* and *Huffman* on the required intent to kill by an accomplice, held that the state legislature, in "delineat[ing] the elements distinguishing the various degrees of homicide," clearly did not intend that an accomplice "could be culpable for first degree murder without proof that [s/he] shared the specific intent to kill." *Id.* at 464. *Wayne* confirms Everett's contention that since the legislature drafted the law on first-degree murder, 18 Pa.Cons.Stat. § 2502 (drafted 1972; revised 1974), Pennsylvania law has clearly required that for an accomplice to be found guilty of first-degree murder, s/he must have intended that the victim be killed. *See also Commonwealth v. Chester,* 557 Pa. 358, 733 A.2d 1242, 1253 n. 12 (1999) ("The holding of *Huffman* ... did not create new law.").

Moreover, the decisive issue here is not whether the trial court's instruction failed to accurately set forth the state of Pennsylvania law in 1980 but whether Everett's counsel was ineffective for failing to object to the instructions. A competent defense lawyer prepared for trial of an accomplice for first-degree murder in 1980 should have known about *Bachert I,* as it was filed well before Everett's trial, and should have, on that basis, demurred to the Com-

monwealth's case, saying that Everett simply could not be convicted of first-degree murder given the Commonwealth's proffered evidence because the Commonwealth did not claim that Everett had the requisite mental state.

Even if the Superior Court's decision in *Bachert I* was not Pennsylvania's final word on the state of the law in Pennsylvania, by itself a questionable proposition, an effective lawyer would have noted that it was authored by a justice of the Pennsylvania Supreme Court, sitting by designation, and thereby been on notice that he should object to jury instructions that were directly contrary to the latest applicable Pennsylvania appellate court decision.

■ Counsel's status as a reasonably competent attorney is not strictly confined to the law as enunciated by the decisions of the jurisdiction's highest court. More is expected from a reasonably competent attorney, especially one in a major criminal case, than merely to parrot Supreme Court cases. A law student could do as much. Instead, a reasonably competent attorney will have reason to rely on authority, especially favorable authority, even if it had not yet been enunciated by the United States Supreme Court or the state's supreme court.

Finally, a reasonably competent lawyer at the time of Everett's trial in 1980 should have noted the glaring lack of evidence that Everett had the requisite intent to kill and should have objected to the charge as inconsistent with due process, as enunciated in *Winship* and *Sandstrom.* We thus agree with Everett that his trial counsel did not perform as effective counsel should have.

*Strickland* involved a claim of ineffectiveness based on "conduct of ... counsel at and before [the habeas petitioner's] sen-

tencing proceeding," 466 U.S. at 698, 104 S.Ct. 2052, not a claim based on counsel's trial decisions. The Supreme Court case that applies the *Strickland* ineffective assistance of counsel analysis to evaluate counsel's decisions at trial is *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Counsel for the defendant convicted of rape had failed to file a timely motion for the suppression of the bed sheet that had been illegally seized. Counsel's failure to file a motion to suppress was not due to trial strategy considerations, but was due to counsel's ignorance because he had failed to conduct any pretrial discovery. *Id.* at 369, 106 S.Ct. 2574. The Supreme Court noted that *Strickland* required "assess[ing] counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." *Id.* at 386, 106 S.Ct. 2574 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). The Supreme Court agreed with both the district court and this court that "counsel's performance fell below the level of reasonable professional assistance," *id.*, and agreed that the case should be remanded for a determination of prejudice. *Id.* at 390, 106 S.Ct. 2574.

■ While the Supreme Court in *Strickland* intentionally did not "establish mechanical rules" for determining whether counsel was ineffective, 466 U.S. at 696, 104 S.Ct. 2052, certain general principles can be noted with respect to counsel's obligation as to the charge. Counsel must not file frivolous objections but at the same time counsel must not neglect to suggest instructions that represent the law that would be favorable to his or her client supported by reasonably persuasive authority. Every trial judge knows that a competent criminal lawyer will find a fruit-

ful source of potentially favorable instructions not only in decisions of the highest court of the jurisdiction but certainly in decisions of the intermediate appellate court of that very jurisdiction. Everett's counsel failed to do that at his trial.

Other courts of appeals that have concluded that trial counsel's performance was ineffective in failing to propose accurate instructions or to object to erroneous instructions have then granted a habeas petition. The Court of Appeals for the Fourth Circuit observed that "an erroneous jury charge may form the basis of a habeas petition, either independently or in conjunction with an ineffective assistance of counsel claim, where the instruction 'so infected the entire trial that the resulting conviction violates due process' by rendering the trial fundamentally unfair." *Luchenburg v. Smith*, 79 F.3d 388, 391 (4th Cir.1996) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). In that case, the Fourth Circuit granted a habeas petition due to the ineffectiveness of petitioner's counsel for failing to request an expanded jury instruction that more accurately described state law. *Id.* at 393. More recently, the Court of the Appeals for the Sixth Circuit, in a post-AEDPA habeas case, found trial counsel ineffective for failure to object, on both constitutional and evidentiary grounds, to jury instructions on the consideration of pre-arrest silence as substantive evidence. *Combs v. Coyle*, 205 F.3d 269, 286 (6th Cir.), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000).

Several other of our sister circuits have granted habeas petitions on the grounds that counsel was ineffective for failing to object to or to propose jury instructions. *See, e.g., Burns v. Gammon*, 260 F.3d 892, 897 (8th Cir.2001) (granting habeas on ineffective assistance grounds due to counsel's failure to object and thus to prompt a

curative cautionary jury instruction); *Freeman v. Class*, 95 F.3d 639, 642 (8th Cir.1996) (granting habeas on ineffective assistance grounds due to counsel's failure to request cautionary instructions on accomplice testimony); *United States v. Span*, 75 F.3d 1383, 1389–90 (9th Cir.1996) (finding ineffective assistance because counsel failed to request a significant jury instruction); *Harris v. Wood*, 64 F.3d 1432, 1438 (9th Cir.1995) (finding ineffective assistance due, inter alia, to "failure to propose, or except to, jury instructions"); *Gray v. Lynn*, 6 F.3d 265, 271 (5th Cir. 1993) (finding ineffectiveness because counsel failed to object to erroneous jury instructions).

Everett's counsel was deficient for not challenging the jury instructions on accomplice liability for first-degree murder.[5] Countless times we have seen lawyers object to instructions on patently flimsy grounds. This was not a flimsy ground.

### B. *Prejudice*

 We have concluded that Everett's counsel was deficient for failing to object to the jury instructions. To find ineffective assistance of counsel, it is also necessary to find prejudice, as the Supreme Court noted in *Kimmelman*, 477 U.S. at 387, 106 S.Ct. 2574. In some cases, that may require a remand, but the record here is clear as to Everett's prejudice.

Everett was convicted of first-degree murder despite the fact that no evidence was adduced at trial that he possessed the requisite intent to kill the victim. Additionally, the prosecutor's trial strategy was based on the premise that even though Everett was not in the store, and even though he had not at any time discussed with his conspirators the use of force, much less deadly force, he could be held liable simply because he participated in the crime by driving the getaway car. This is evident in the prosecutor's closing remarks where he said, "I'm not going to stand here and make a moron out of myself and tell you that they planned to shoot Jon Jennings. They didn't. It happened." App. at 61. Everett's counsel's failure to object to the jury instructions allowed for the conviction of Everett based on the specific intent of the actual killers themselves.

The standard established in *Strickland* for prejudice is whether there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. In this case, but for the failure of counsel to object to the jury instructions, there is more than a reasonable probability that Everett would

---

5. As an additional basis to show that Everett's trial counsel was not ineffective, the Commonwealth notes that he did cite *Bachert I* in his direct appeal in support of his argument that the evidence offered at trial was insufficient to support Everett's conviction. Supp. App. at 709. At oral arguments, Everett's current counsel conceded that Everett's trial counsel did mention *Bachert I* in his appeal, although the appellate court did not address any of the issues relating to *Bachert I*. *Commonwealth v. Everett*, 299 Pa.Super. 182, 445 A.2d 514 (1982). Everett's current counsel noted, however, that (a) Everett's trial counsel did not object to the jury instructions and did not refer to *Bachert I* or the relevant principle from it at the crucial moment and (b) when Everett's counsel did cite *Bachert I* in his brief on direct appeal, he "got it wrong." While the trial counsel's characterization of *Bachert I* in his brief for the direct appeal is not obviously incorrect, from the context in which he cites it and the brief discussion he gives to it, it seems clear that Everett's counsel did not adequately appreciate the strength and relevance of *Bachert I*. In any event, that *Bachert I* was cited in Everett's brief on direct appeal does not by itself undermine Everett's claim of ineffective assistance of counsel for failing to object to the incorrect instructions at trial.

not have been convicted of first-degree murder because there was no evidence that he possessed the requisite specific intent to kill. We recognize that the Pennsylvania courts rejected Everett's claim of ineffective assistance of counsel on appeal of the denial of Everett's PCRA petition. But they did that on the basis of their interpretation of Pennsylvania state law.[6] We, on the other hand, are applying federal due process which encompasses the requirement of effective assistance of counsel. On that issue, we need not defer to the state courts. We note, once again, that the state courts did not discuss the due process issue.

In light of our conclusion that under *Strickland* trial counsel was ineffective for failing to raise objections to the jury instructions, we do not need to reach the question of whether Everett's trial counsel was ineffective under state law for failing to raise state law objections to the jury instructions.

## V.

### CONCLUSION

Everett's counsel was ineffective by virtue of his failure to press the issue of whether an accomplice who did not have the intent to kill can be found guilty of first-degree murder based on accomplice liability, generally, and, in particular as this issue related to the instructions the trial court gave to the jury. Everett was clearly prejudiced by his counsel's ineffectiveness. Everett is serving a life sentence for first-degree murder despite jury instructions that failed to charge, in accordance with the law of both Pennsylvania

and the United States, that such a conviction requires proof of an accomplice's intent to kill and despite the Commonwealth's failure to prove that Everett had an intent to kill or even claimed that he did. This must be an instance such as that referred to in *Duncan*, citing *Strickland*, where counsel's deficient performance "undermine[s] confidence in the trial's outcome." *Duncan*, 256 F.3d at 200 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

The judgment of the District Court will therefore be reversed to the extent that it denied Everett's petition for habeas relief with regard to his conviction for first-degree murder. We will remand this matter to the District Court for further proceedings consistent with this opinion.

---

**6.** Not only are these state court decisions in tension with later state court decisions, in particular *Wayne* and *Chester*, an inconsistency about which there is little we can do, *see, e.g., Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (interpretation of state law must be left to the state courts), but the state courts addressed the question of whether *Bachert II* could be applied retroactively to Everett's case and simply ignored *Bachert I*.