

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-19-2004

# Priester v. Vaughn

Precedential or Non-Precedential: Precedential

Docket No. 03-2956

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Priester v. Vaughn" (2004). *2004 Decisions.* Paper 366.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/366

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

No. 03-2956

BARRY PRIESTER,
                                    Appellant

v.

DONALD T. VAUGHN;
THE DISTRICT ATTORNEY OF
THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA

On Appeal from the United States
District Court for the Eastern District of
Pennsylvania
(D.C. Civil No. 02-cv-00075)
District Judge:  Hon. Stewart Dalzell

Argued May 4, 2004

Before:  SLOVITER, FUENTES and
BECKER, Circuit Judges

(Filed: August 19, 2004)

Johanna E. Markind          (Argued)
Philadelphia, PA 19102

          Attorney for Appellant

Thomas W. Dolgenos          (Argued)
          Chief, Federal Litigation
Ronald Eisenberg
          Deputy District Attorney
          Law Division
Arnold H. Gordon
          First Assistant District Attorney
Lynne Abraham
          District Attorney
Philadelphia, PA 19102-1582

          Attorneys for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal arises from appellant Barry Priester's 1991 state conviction of first degree murder, two counts of aggravated assault, criminal conspiracy, and possession of an instrument of crime. Priester appeals the decision of the United States District Court for the Eastern District of Pennsylvania denying his petition for a writ of habeas corpus. The District Court had subject matter jurisdiction over Priester's habeas corpus petition pursuant to 28 U.S.C. § 2254 and we have jurisdiction pursuant to 28 U.S.C. §§ 1291, 2253.

I.

FACTS AND PROCEDURAL
HISTORY

On May 19, 1990, Priester and Nathaniel Butler met Tracey Postell at the corner of 8th and Louden Streets in Philadelphia.  Priester told Postell that he was meeting a group of people to confront the individuals who had "rolled" Darius Barnes – a mutual friend. Postell agreed to

accompany Priester and Butler to locate these individuals. Priester drove one car while Barnes drove another. Two or three other cars containing additional gang members joined the caravan. According to Postell's trial testimony, at one point along the way Priester pulled alongside Barnes' car and said, "[w]hen we get up there, no questions asked, start busting." Trial Tr. at 190 (Sept. 13, 1991).

The cars arrived at the Belfield Recreational Center in North Philadelphia and Barnes began searching the playground for their targets. Once Barnes identified the individuals who "rolled" him, Priester removed a gun from his jacket and handed it to Butler. Butler fired several shots into the crowd. Shots were also fired from the other vehicles. Soon after the shooting, Priester and the others drove away from the scene. As a result of the shooting, Terrence Lucan died, and Ronald Holliman and Walter Jefferson sustained significant injures.

On June 7, 1990, Philadelphia Homicide Detective Frank McGouirk questioned Postell about the shooting. At that time, Postell, who subsequently pled guilty in a negotiated plea, detailed the factual scenario surrounding the shooting as well as Priester's and Butler's involvement. Butler was then arrested and questioned. He stated that Priester was in the car with him and Postell, and that Butler shot twice into the crowd with a .38 caliber pistol.

After further investigation, Priester and Barnes were indicted on first degree murder, two counts of aggravated assault, criminal conspiracy and possession of an instrument of crime. They were tried together in the Philadelphia Court of Common Pleas before a jury. During testimony at trial, Postell attempted to recant the story he told the police and stated that he had lied to the police and was asleep in the car when the incident occurred. Having been forewarned by defense counsel about this change, the prosecution sought the trial court's approval to admit Butler's previous statement, which the trial court granted subject to redaction. Thereafter, a redacted version of the prior statement made by Butler, describing the incident, was introduced at trial. This redacted statement replaced Priester's name, and all other names, with phrases such as "the other guy." App. at 91-97. At the conclusion of the trial, the jury convicted Priester as well as Butler on all counts. At the sentencing phase, the jury returned a sentence of life imprisonment for each defendant on the murder convictions and the court imposed sentences on the remaining counts, to run concurrently for both defendants.

After the trial court denied post-verdict motions, Priester appealed to the Pennsylvania Superior Court, contending that the Commonwealth breached its agreement not to introduce Butler's prior statement and challenging the sufficiency of the redaction, the admission of Postell's earlier statement as substantive evidence, and the sufficiency of the evidence to convict him of first degree murder. The

2

court rejected these claims. The Pennsylvania Supreme Court denied allocatur. Commonwealth v. Priester, 634 A.2d 220 (Pa. 1993). Priester then filed a petition for collateral review under the Pennsylvania Post-Conviction Relief Act, 42 Pa. Cons. Stat. § 9541 et seq. (2003) ("PCRA"), which was denied by both the trial court and the Superior Court.

Priester next petitioned for allocatur in the Pennsylvania Supreme Court of three issues. He argued that Butler's statement was insufficiently redacted in violation of Bruton v. United States, 391 U.S. 123 (1968); that the trial court erred because it admitted Postell's prior inconsistent statements as substantive evidence; and that the jury instructions regarding accomplice liability were deficient. The Pennsylvania Supreme Court denied allocatur.

Thereafter, Priester filed a pro se petition for a writ of habeas corpus in the District Court, which was amended after the appointment of new counsel. The matter was referred to a Magistrate Judge, who issued an opinion recommending that Priester's claims be denied. The District Court approved and adopted the Magistrate Judge's recommendation, but certified for appeal two of the many claims raised by Priester: the claim that the admission of Butler's redacted statement violated the Confrontation Clause of the Sixth Amendment, and the claim that trial counsel was ineffective because of his failure to object to the jury instruction on accomplice liability.[1] We now consider these issues on appeal.

## II.

## DISCUSSION

*A. Standard of Review*

At the outset, we set forth our standard of review. Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

---

[1] Counsel for Priester attempts to add an ineffectiveness of counsel claim based on a failure to object to the admission of the redacted statement. See Appellant's Br. at 20-24. However, the District Court certified only the two issues set forth above for appeal, App. at 7, and we denied Priester's request to certify other issues on September 23, 2003. Therefore, we decline to discuss this issue herein. In any event, in his reply brief Priester states that the issue is properly presented as a Confrontation Clause claim. Appellant's Reply Br. at 2 n.1. We decline to discuss the due process claims related to the arguments made on appeal for the same reason.

3

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States .

. . .

28 U.S.C. § 2254(d) (emphasis added).

Priester argues that because the Pennsylvania Superior Court cited only Pennsylvania law with no reference to federal law, we need not apply AEDPA's deferential standard of review. In granting a certificate of appealability, the District Court stated it believed that the deferential standard was applicable, but cited in a footnote this court's opinion in Everett v. Beard, 290 F.3d 500 (3d Cir. 2002), which held otherwise. We need not dwell on this issue[2] because subsequent opinions of the Supreme Court of the United States have made clear that as long as the reasoning of the state court does not contradict relevant Supreme Court precedent, AEDPA's general rule of deference applies. Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002). In Early, the Supreme Court held that qualification for AEDPA deference "does not require citation of our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state court decision contradicts them." Early, 537 U.S. at 8 (emphasis in original). Similarly, in Woodford, the Supreme Court held that the California Supreme Court's "shorthand reference" to the ineffective assistance of counsel standard, while imprecise, did not render the decision unworthy of deference. Woodford, 537 U.S. at 24; see also Bell v. Cone, 535 U.S. 685, 698 (2002) (applying the deferential AEDPA standard of review where the state court had relied only on its

---

[2] We note that in Everett, the accomplice liability instruction was patently erroneous as a matter of law, as the trial court peppered its instructions with legal admonitions such as, "[a] killing is willful and deliberate if the defendant and/or his accomplice . . . consciously decided to kill the victim . . . ." Everett, 290 F.3d at 504 (emphasis in original). Instead of objecting, trial counsel actually "complimented the judge on the fairness of these instructions after the jury left the courtroom." Id. at 505. The Commonwealth argued that accomplice liability for first-degree murder was not clearly established at the time of Everett's trial, but we held that Everett's trial counsel was ineffective for failing to object to an instruction that allowed a juror to ascribe an accomplice's intent to the defendant and that a Pennsylvania Superior Court decision filed well before Everett's trial should have given counsel a basis to object. The Everett opinion noted that the Pennsylvania Supreme Court thereafter specifically held that for an accomplice to be found guilty, s/he must have intended that the victim be killed. Id. at 512-14.

4

own precedent to reject the petitioner's ineffective assistance of counsel allegation); Rompilla v. Horn, 355 F.3d 233 (3d Cir. 2004) (applying AEDPA deference to Pennsylvania court's determination of petitioner's allegation of ineffective assistance of counsel despite the court's failure to expressly cite to the Strickland standard).

Accordingly, we hold that the deferential standard of AEDPA applies even if the state court does not cite to any federal law as long as the state court decision is consistent with federal law.

### B. *Bruton* Issue

In order to protect a defendant's Sixth Amendment rights to confrontation and cross-examination, trial courts that admitted statements of non-testifying co-defendants would routinely instruct jurors that the statements were not to be considered evidence against the defendant at trial. In Bruton, the Supreme Court recognized the inadequacy of such instructions, stating that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great . . . that the practical and human limitations of the jury system cannot be ignored." Bruton, 391 U.S. at 135.

The Court held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of [the co-defendant's] confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." Id. at 126. The Court noted that some courts had redacted the statement to avoid the Sixth Amendment issues. See id. at 134 n.10 ("Some courts have required deletion of references to codefendants where practicable."). Thereafter, the courts generally followed the practice of redacting co-defendants' statements in order to eliminate all explicit references to other defendants on trial before those statements were admitted into evidence.

Priester argues that the admission of Butler's redacted statement violated his Sixth Amendment right to confrontation. The issue arose in the instant case because Postell gave testimony at trial that differed from the statements that he gave to police. The state moved to admit Butler's statement as evidence of Butler's involvement in the shooting. The statement was redacted to replace all references to Priester and other participants in the shootings with words such as "the other guy," "someone," "someone else," "the guy," and "another guy." App. at 91-97. In relevant part, the redacted statement read at trial was:

> A: Well like 15 guys came and we were all sitting on the corner of 8th and Louden Sts. It was like 4 something in the afternoon. Several guys came up to the corner some were walking and others were in cars. They started fighting and shooting at anybody who

5

was out there. . . . Somebody gave one of the guys a .38 caliber gun . . . . Then another guy shot twice. After the first guy shot they pulled off and after the other two shots I pulled off.

. . . .

Q: In what car was the guy who shot first?

A: He was the passenger in the front seat of the brown Toyota. That was the first car.

Q: How many were in the car with him?

A: Two other guys.

Q: How many were in the second car?

A: I was the driver and two others.

Q: How many shots did you see fired from the second car?

A: Two.

. . . .

Q: Who did the guy in your car shoot at?

A: He just put out the window and shot twice. He wasn't looking.

App. at 91-93. The trial court instructed jurors:

> A statement made by a defendant before trial may be considered as evidence but only against the defendant who made the statement. You may not consider one defendant's statement as evidence against the other defendant[ ] . . . .

Trial Tr. at 416 (Sept. 17, 1991).

Priester argues that the admission of this redacted statement violated the Sixth Amendment because replacing Priester's name with varying phrases and pronouns did not adequately shield his identity, as other trial testimony made clear who was in the second car. During Postell's testimony, he identified the occupants of his car as being "Barry [Priester] and Nate [Butler]." App. at 108 (quoting Trial Tr. at 182 (Sept. 13, 1991)). Furthermore, in his opening statement, the prosecutor claimed,

> in the first of those cars was an individual by the name of Darius Barnes. In another car, the defendants, Nathaniel Butler and Barry Priester, were riding along with an individual named Tracey Postell.

App. at 106 (quoting Trial Tr. at 20 (Sept. 12, 1991)).

From Postell's testimony and the prosecutor's opening statement, which is not evidence, the jury could have inferred

6

that the "other guy" in Butler's statement was Priester. But this inference is not a foregone conclusion. There were at least fifteen perpetrators in various cars involved in the shooting. The redacted statement by Butler is unclear as to the people in the first car, in the second car, who was shooting when and from which car. This is because the trial court removed not just references to Priester, but removed references to every name in the statement, making the statement difficult to follow.

Subsequent to Bruton, the Supreme Court held that the introduction of the redacted statement of a nontestifying co-defendant was not unconstitutional. It rejected the contextual implication argument Priester makes here. It stated that where ascertaining the identity of a co-defendant in a redacted statement requires an inference drawn from linking other evidence to the statement, the risk that the jury cannot follow limiting instructions is not sufficiently substantial to violate the Sixth Amendment. Richardson v. Marsh, 481 U.S. 200, 208 (1987) ("Where the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence."). "In short, while it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so . . . ." Id.

Priester argues that the Supreme Court's decision in Gray v. Maryland, 523

U.S. 185 (1998), and this court's decision in United States v. Richards, 241 F.3d 335 (3d Cir. 2001), clarify the rule set forth in Richardson in a manner that supports his argument. We find this unpersuasive. In the first place, both decisions were announced after Priester's merits appeal was heard in the Pennsylvania Superior Court and it did not act unreasonably in failing to predict the Supreme Court's decision in Gray. Moreover, the decision in Gray, even if applicable, does not support Priester's contention. The Court explained in Gray that it "granted certiorari in order to consider Bruton's application to a redaction that replaces a name with an obvious blank space or symbol or word such as 'deleted.'" Gray, 523 U.S. at 188. It then held that such redactions were constitutionally impermissible. In Richardson, the issue was "whether Bruton requires the same result when the codefendant's confession is redacted to omit any reference to the defendant, but the defendant is nonetheless linked to the confession by evidence properly admitted against him at trial." Richardson, 481 U.S. at 202. The Court held that the admission of the redacted confession was not unconstitutional.

The Court in Gray explained that the key difference between Gray and Richardson was the extent to which the statement's alterations directly connected the statement to the defendant, as "nicknames and specific descriptions fall inside, not outside, Bruton's protection." Gray, 523 U.S. at 195. The reasons given in Gray for holding such redactions

7

impermissible – such as "an obvious blank will not likely fool anyone," "the obvious deletion may well call the jurors' attention specially to the removed name," and that "a blank or some other similarly obvious alteration" are "directly accusatory," Gray, 523 U.S. at 193-94 – do not apply to the instant case. There are no such "nicknames," descriptions or phrases that directly implicate Priester in the instant case.

Finally, in this court's Richards opinion, on which Priester relies, there were only three people involved in the case, one of whom was the confessor and one of whom was the co-defendant Richards, and the word "friend" was substituted for Richards' name. Richards, 241 F.3d at 341. As the prosecutor called the co-defendant's mother to testify that the confessor and co-defendant Richards were "friends," the word "friend" unequivocally pointed to Richards. In contrast, in this case there were at least fifteen perpetrators involved in the shooting, and the phrases "the other guy" or "another guy" are bereft of any innuendo that ties them unavoidably to Priester. In Richards, the replacement was tantamount to an explicit reference to the co-defendant; the same cannot be said for the redaction in the instant case.

Because the trial court redacted the statement carefully, and because it gave appropriate limiting instructions before the admission of the statement and during jury instructions, the District Court did not err in holding that the admission of Butler's redacted statement did not run afoul of the Sixth Amendment.

## C. Jury Instruction Issue

Priester argues that the District Court erred in concluding that his trial attorney's failure to object to the jury instructions did not constitute ineffective assistance of counsel. The parameters of the Sixth Amendment right of a criminal defendant to receive effective assistance of counsel were set forth in Strickland v. Washington, 466 U.S. 668, 686 (1984). A defendant claiming a violation of this right must make a two-part showing:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

"Judicial scrutiny of counsel's performance must be highly deferential" to ensure "the wide latitude counsel must have in making tactical decisions." Id. at 689. "[A] court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id.

The portion of the trial judge's jury instruction which Priester claims was misleading was:

> [M]urder of the first degree is a criminal homicide committed with a specific intent to kill. An intentional killing is a killing by means of poison or by lying in wait or by any other kind of willful, deliberate and premeditated act.
>
> Therefore, in order to find the defendants guilty of murder in the first degree, you must find that the killing was a willful, deliberate and premeditated act.
>
> . . . .
>
> Members of the jury, you may find a defendant guilty of a crime without finding that he personally engaged in the conduct required for commission of that crime or even that he was personally present when the crime was committed.
>
> A defendant is guilty of a crime if he is an accomplice of another person who commits that crime.

> A defendant does not become an accomplice merely by being present at the scene or merely by knowing of the crime. He is an accomplice if, with the intent of promotion or facilitating commission of the crime, he solicits or commands or encourages or requests another person to commit it or if he aids or agrees to aid or attempts to aid the other person in planning or committing it.
>
> You may find the defendants guilty of a crime on the theory that they were an accomplice as long as you are satisfied beyond a reasonable doubt that the crime was committed and the defendants were an accomplice of the persons who committed it.

Trial Tr. at 564-65, 577-78 (Sept. 19, 1991).

Priester argues that although he was charged with three different degrees of homicide, including first degree murder which requires a specific intent to kill, Smith v. Horn, 120 F.3d 400, 422 (3d Cir. 1997), "the import of the instruction regarding the requirement of specific intent to kill was diluted by the court's instructions regarding accomplice liability." Appellant's Br. at 25. As the District Court stated:

Priester claims that the instruction to the jury enabled the jury to find him guilty as an accomplice to first-degree murder even if he did not have the intent to kill. This instruction, Priester continues, violated Pennsylvania law – which makes specific intent to kill an essential element for accomplice liability to first degree murder – and burdened his fundamental right under the Due Process Clause to be convicted only upon proof beyond a reasonable doubt of every element of the offense.

App. at 20 (footnotes omitted). On state collateral review, the Pennsylvania Superior Court held that the instructions were correct as a matter of state law. App. at 71.

Federal courts reviewing habeas claims cannot "reexamine state court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). This is particularly true in the instant case because the issue of appropriate jury instructions on accomplice liability in first-degree murder trials has been squarely addressed by the Pennsylvania Supreme Court. Commonwealth v. Thompson, 674 A.2d 217, 222-23 (Pa. 1996) (upholding accomplice liability instructions nearly identical to those quoted above); Commonwealth v. Chester, 587 A.2d

1367, 1384 (Pa. 1991) (same).

Bound by the state court's determination that the instruction at issue comported with state law, it is evident that Priester cannot satisfy the first component of a viable ineffective assistance of counsel claim – that counsel's performance was deficient. Thus Priester cannot overcome the "strong presumption" that his counsel's conduct fell outside the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

### III.

### CONCLUSION

Applying AEDPA's deferential standard in reviewing Priester's habeas petition, we hold that the District Court did not err in concluding that the admission of the redacted statement comported with the requirements of the Sixth Amendment and that trial counsel's failure to object to the accomplice liability instruction did not constitute ineffective assistance of counsel.

For the reasons given above, we will affirm the District Court's order denying the petition for a writ of habeas corpus.

10